SAM WEISBERGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56195. Promulgated October 6, 1933.

*Louis E. Spiegler*, Esq., and *N. Norman Mayer*, Esq., for the petitioner.

*Frank A. Surine*, Esq., for the respondent.

84

86

OPINION.

GOODRICH: The issue here is one of fact—whether the distributions by the company to petitioner and the other stockholders were loans, or distributions in liquidation. Petitioner contends that they were bona fide loans; that the corporation was not in liquidation in either 1926 or 1927, and therefore, that no distributions in liquidation were made in those years. In the alternative he contends that if his withdrawals in 1927 were liquidating dividends, only $41,250 should be included in his income, since that is the amount he received in cash that year. We reject both these contentions. It may be that the amounts withdrawn by petitioner prior to July 1, 1926, were intended as loans, but it is quite apparent that thereafter their character changed, and the company entered upon a pro rata distribution to its stockholders. Cf. *Moses Cohen*, 28 B.T.A. 190.

Before that time interest on his withdrawals had been charged against him; thereafter it was not. The amounts paid to stock-holders other than petitioner on that date and on February 28, 1927—the two distribution dates when he received no cash—total $78,750, including a reduction in cash distributed to Sunshine, offsetting the $500 previously advanced to him. Petitioner's indebtedness then amounted to $96,250; these figures total $175,000, of which the distributions to the other stockholders amount to 45 per centum—the exact ratio of their stockholdings. Petitioner's 55 per centum of

the total would amount to $96,250—exactly the amount he owed. Distributions in exact ratio of stockholdings do not occur by accident, and we think it plain that here they evidence an agreement among the stockholders to liquidate the company. Obviously, petitioner's existing indebtedness to the company was offset by omitting cash distributions to him, and after that was done he shared in the cash distributions pro rata. Moreover, no part of these distributions was ever repaid by the recipients to the company, nor is there any evidence of any intention so to do, or of any demand by the company that it be done. We are satisfied that these distributions were not loans—see *L. J. Christopher*, 13 B.T.A. 729; affd., 55 Fed. (2d) 527; *S. Schulein Co.*, 20 B.T.A. 264; *Daniel Hunt, Sr.*, 6 B.T.A. 558, and it remains to be determined whether they were made in liquidation of the company within the meaning of section 201, Revenue Act of 1926.

It is clear that the company was in liquidation in 1927. Upon its returns for that year it so declared; in that year it sold its physical assets, ceased operations except for the collection of its few accounts, distributed practically all its funds, and shortly afterwards dissolved. It is likely that it began its liquidation in 1926, for it then disposed of its real estate, permitted its business to contract sharply and its inventory to decline, and distributed cash to the amount of 45 per centum of its capitalization. But whether the company was in liquidation in 1926 is immaterial here. Respondent has determined that petitioner received $137,500 upon liquidation of the company in 1927, made up of his debt of $96,250 and $41,250 cash received in that year. Of that amount respondent has treated $55,000 as return of capital—the cost of the stock—and has included the balance in income and taxed it as a liquidating dividend. Petitioner, upon whom lies the burden of proof, has failed to show that determination erroneous. He has not disclosed when his indebtedness was canceled by the company, thus making the sum thereof a receipt by petitioner, and his property. It may be that $55,000 of the indebtedness was canceled on July 1, 1926, but petitioner has not so proved. On the contrary, the figures disclosing the cash distributions indicate that the entire indebtedness was canceled on February 28, 1927. It was then that the $500 previously advanced to Sunshine was offset against a cash distribution to him, and it was then that the cash distributions to the other stockholders totaled the pro rata equivalent of the withdrawals previously made by petitioner. No attack is made on respondent's treatment as capital net gain of the amount received in excess of the cost of petitioner's stock; nor does the record disclose any corporate action supporting petitioner in reporting the amounts received as dividends in 1929 and 1930.

*Judgment will be entered for the respondent.*